RECEIVED

MAY 1 5 2017

DEBORAH S. HUNT, Clerk

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**JOHN ANTHONY GENTRY,**

Plaintiff - Appellant

v.                                                        **No. 17-5204**


**THE HONORABLE JOE H. THOMPSON,**
**Circuit Court Judge**

Defendant - Appellee

---

### VERIFIED EMERGENCY MOTION TO STAY STATE COURT
### PROCEEDINGS AND ESTOPPEL BY CONDUCT

---

Plaintiff moves this Honorable Court to issue an immediate and emergency injunction to stay state appellate court proceedings in the Court of Appeals For The State of Tennessee, Middle Section, at Nashville: CCA No. M2016-01765-COA-R3-CV for good cause as follows;

Pursuant to 28 U.S.C. § 2283, a court of the United States may grant an injunction to stay proceedings in a State court when expressly authorized by Act of Congress. Amendment XIV § 1 of the United States Constitution guarantees that no state shall deprive any person of liberty or property without due process of law, nor deny any person within its jurisdiction the equal protection of the laws. 42

1

U.S.C. § 1983 is an Act of Congress providing redress for deprivations of rights privileges, or immunities secured by the U.S. Constitution. Therefore, by Act of Congress, the United States Court of Appeals for The Sixth Circuit has authority to grant a stay of proceedings in State court in this matter.

1.   It is essential for this Court to grant immediate injunctive relief and stay proceedings in Court of Appeals For The State of Tennessee, Middle Section, at Nashville: CCA No. M2016-01765-COA-R3-CV to prevent great, immediate, and irreparable loss of Plaintiff's constitutional rights and property.

2.   In the present matter before this Court, Plaintiff, herein after referred to as MR. GENTRY, has brought suit against Defendant, The Honorable Judge Joe H Thompson, for repeated and gross violations of 42 U.S.C. § 1983 and Amendment XIV U.S. Constitution § 1.

3.   MR. GENTRY sought to correct the rulings of the Defendant in state appellate court CCA No. M2016-01765-COA-R3-CV, but instead of finding an impartial state appellate court, Plaintiff has suffered further gross due process violations at the hands of the state appellate court, and now finds himself in great fear of that court which is why he comes now before this Court seeking a stay of those "proceedings"

4.   In a separate complaint, MR. GENTRY has also brought suit against the State of Tennessee, et al, for violations of the following laws: 18 USC § 2, 1346, 1961,

1962, 1341, 1512, 1951, 1952, 42 U.S.C § 1983 and 1985, in the U.S. District Court for The Middle District of Tennessee, Case No. 3:17-cv-0020.

5.      The State, its agents, agencies and arms of the State, in conspiracy with attorney officers of the court, have engaged in a clear pattern of racketeering activities, and have grossly violated MR. GENTRY's constitutionally guaranteed rights, denied him his property and income, caused him great mental anguish, and extorted money from him.  The facts establishing these allegations are undeniable and well evidenced.   See facts plainly stated in MR. GENTRY's Amended Compliant *(Docket Entry 6)* on appeal before this Court, Case No. 3-16-cv-02617 pages 9 – 37.  See also facts plainly stated in MR. GENTRY's Second Amended Complaint *(Docket Entry 36)* in the U.S. District Court for The Middle District of Tennessee, Case No. 3:17-cv-0020, still pending before the U.S. District Court.

6.      MR. GENTRY understands and recognizes the need for federal courts to provide state court judges "the benefit of a doubt" as a courtesy to preserve "judicial integrity."  However, the state courts have so abused this courtesy, they no longer have any regard whatsoever for rights guaranteed in our federal constitution, and they openly violate constitutionally guaranteed rights with contempt and impunity.

7.      Unfortunately, litigants whose rights have been grossly violated by the states, cannot obtain legal representation to preserve their rights, due to the "legal monopoly" and refusal by the legal community, to take action against "one of their

own." Left to defend their rights on their own, the few who seek protection of the federal courts, all fail at the District Court level due to the difficulty of navigating the federal legal system without representation. In this way, the federal appellate courts are insulated from this almost insurmountable problem of constitutional rights violations that occur in state courts on most any given day. See Second Amended Complaint (*Docket Entry 36*) in the U.S. District Court for The Middle District of Tennessee, Case No. 3:17-cv-0020, pages 54 – 55 and 84 – 87 proving the state receives 1.48 complaints against judges per day, and dismisses every compliant on the basis of "insufficient factual evidence" or "complaint about ruling" which is a statistical impossibility.

8.     MR. GENTRY does stand with the Sixth Circuit Court of Appeals as guardians of the principles upon which our country was founded, and protects the rights guaranteed in the U.S. Constitution under this Court's *statutory duty (1844)*.

## LEGAL BASIS PERMITTING STAY OF STATE COURT PROCEEDINGS

9.     In the Supreme Court Case, Mitchum v. Foster, the Supreme Court has affirmed when it is proper for a federal court to stay and enjoin state court proceedings as follows:

> **… the Court through the years found that federal courts were empowered to enjoin state court proceedings, despite the anti-injunction statute, in carrying out the will of Congress under at least six other federal laws.** These covered a broad spectrum of congressional action: **(1) legislation providing for removal of litigation from state to federal**

4

> **courts**, (2) … *Mitchum v. Foster, 407 US 225 - Supreme Court 1972 (at 234 – 235)*

10.  In the same case, the Supreme Court issued opinion affirming beyond doubt that, pursuant to 28 U.S.C. § 2283, a court of the United States may grant an injunction to stay proceedings in State court, in causes of action brought under 42 U.S.C § 1983.  In discussing the basis of its Opinion, the Supreme Court considered why congress enacted § 1983 as follows:

> **Proponents of the legislation noted that state courts were being used to harass and injure individuals**, either because the state courts were powerless to stop deprivations or **were in league with those who were bent upon abrogation of federally protected rights**. (id at 240)

11.  MR. GENTRY has alleged and established beyond any doubt, that the state courts and other agencies of the State are in fact "in league" with each other and with attorney officers of the court to abrogate federally protected rights.  (*See U.S. District Court for The Middle District of Tennessee, Case No. 3:17-cv-0020 Docket Entry 36 Second Amended Verified Complaint second and third causes of action*).

12.  Also, in the Mitchum case, the Supreme Court recognized that § 1983 was an "Act of Congress" permitting stay injunctions of state court proceedings.

> **The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law,** "whether that action be executive, legislative, or judicial." Mitchum v. Foster, 407 US 225 - Supreme Court 1972 (at 242)

> In carrying out that purpose, **Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a "suit in equity" as one of the means of redress**. And this Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be **essential to prevent great, immediate, and irreparable loss of a person's constitutional rights**. (id at 242)

13.    MR. GENTRY comes before this Honorable Court today seeking protection from the tyranny of the State. (*see Federalist Papers: No 43*) MR. GENTRY begs this Honorable Court to stand as guardian of his Constitutional Rights, and he respectfully asserts it is the solemn duty of this Court to grant such protection, and issue a stay before MR. GENTRY suffers further irreparable harm.

14.    The Supreme Court could not have been clearer, that federal courts have the authority to issues injunctions against state courts in § 1983 actions.

> Today we decide only that the District Court in this case was in error in holding that, because of the anti-injunction statute, it was absolutely without power in this § 1983 action to enjoin a proceeding pending in a state court under any circumstances whatsoever. (id at 243)

15.    Further considering the Mitchum Opinion, the Supreme Court referenced quotations of the legislators who enacted § 1983.

> This view was echoed by Senator Osborn: **"If the State courts had proven themselves competent** to suppress the local disorders, or **to maintain law and order, we should not have been called upon to legislate** . . . . We are driven by existing facts to provide for the several states in the South what they have been unable to fully provide for themselves; i. e., the full and complete administration of justice in the courts. And the courts with reference to which we legislate must be the United States

courts." Id., at 653. And Representative Perry concluded: "Sheriffs, having eyes to see, see not; **judges, having ears to hear, hear not; witnesses conceal the truth or falsify it;** grand and petit juries act as if they might be accomplices . . . . [A]ll the apparatus and machinery of civil government, all the processes of justice, skulk away as if government and justice were crimes and feared detection. **Among the most dangerous things an injured party can do is to appeal to justice."** Id., at App. 78. (id at 241)

16.    The exact same circumstances described by Senator Osborn and Representative Perry, *"judges, having ears to hear, hear not"* and *"Among the most dangerous things an injured party can do is appeal to justice"* are the exact same circumstances that unfortunately occurred in the underlying litigation to this case.

17.    MR. GENTRY came before The Honorable Judge Joe H Thompson seeking protection, but instead of finding the rightful protection he sought, MR. GENTRY found himself before a "dangerous judge" who repeatedly (1) denied him his constitutionally protected rights, (2) extorted money from him, (3) ignored facts, (4) ignored obvious perjury, (5) obstructed evidence and testimony and (6) conspired to commit these actions with attorney officers of the court.    In this present case before this Court, despite the above actions by Defendant The Honorable Judge Joe H Thompson, MR. GENTRY only brings suit against the Defendant for § 1983 violations and only seeks equitable relief in this matter.

18.    MR. GENTRY is an Honorably Discharged Veteran and hearing impaired caused by his service to country and wholeheartedly believes in our system of

justice. It is MR. GENTRY's belief in our system of justice, that gives him strength to preserve the Constitution through complaints in federal court. As a patriot from a long line of family service to country, MR. GENTRY has "stood the wall" protecting and defending the Constitution and stands again today in defense of the same. MR. GENTRY begs this Court to do the same, and stand with him in defense of the Constitution.

19.    Other federal Courts have adhered to the Supreme Court ruling in the Mitchum case. *"The standard for determining when an injunction of a state court proceeding is "expressly authorized by Act of Congress" is laid out in Mitchum..."* *Texas Employers' Ins. Ass'n v. Jackson, 820 F. 2d 1406 - Court of Appeals, 5th Circuit 1987 (at 1415).* *"See 28 U.S.C. § 2283 (allowing a federal court to enjoin state court proceedings "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment");* *Mitchum..."* *Condon v. Haley, 21 F. Supp. 3d 572 - Dist. Court, D. South Carolina 2014 (at 590).* *"Section 1983 opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation."* *Murawski v. Pataki, 514 F. Supp. 2d 577 - Dist. Court, SD New York 2007* (at 592)

## WHY THIS COURT SHOULD STAY STATE COURT PROCEEDINGS

20.    MR. GENTRY sought state appellate court relief due to Defendant The Honorable Judge Joe H Thompson's gross violations of due process. Instead of finding relief, MR. GENTRY has been forced to endure repeated due process violations against him by the Tenn. Ct. of Appeals. It is for this reason, MR. GENTRY seeks a stay of state appellate court proceedings in CCA No. M2016-01765-COA-R3-CV.

21.    First, it is just common sense reasoning to stay Tenn. Ct of Appeals proceedings, due to the fact that the state appellate court's rulings will be based upon rulings made through gross due process violations. Any rulings by the state appellate court, upholding any of DEFENDANT JUDGE JOE H THOMPSON's rulings would have to be undone. MR. GENTRY was repeatedly denied his right to argue, denied to right to present evidence and testimony, denied his right of cross-examination, and his evidence was repeatedly obstructed, and any rulings made under those conditions must be made null and void and cannot be upheld in state appellate court proceedings.

22.    Second, there is no harm in staying state court proceedings. There was no crime, except those committed by the State against MR. GENTRY, so the state suffers no harm. The opposing party has not appealed any of DEFENDANT JUDGE JOE H THOMPSON's rulings, so the opposing party suffers no harm.

23.     Simply put, it is just common sense to stay proceedings in this matter pending a decision by this Honorable Court to enforce MR. GENTRY'S constitutional rights.

24.     Conversely, if this Court does not stay state court proceedings, MR. GENTRY will suffer further violations of due process causing him irreparable harm: loss of property and forced abject poverty. MR. GENTRY begs this Court's guardianship of his constitutionally guaranteed right of due process and he begs this Court's protection from the tyranny of the state.

## FURTHER DUE PROCESS VIOLATIONS IN STATE APPELLATE COURT ARE A CERTAINITY

25.     MR. GENTRY has already suffered numerous and scandalous due process violations at the hands of the Tenn. Ct. of Appeals.

26.     In the latest instance, MR. GENTRY requested the Tenn. Ct. of Appeals to stay proceedings pending the outcome of this case before this Court. **MR. GENTRY also requested an extension of time for oral argument**.

27.     The record in the underlying litigation consists of more than 3,400 pages of Technical Record and more than 700 pages of Exhibits and 12 Transcripts. **Tenn. Rules of Appellate Procedure (T.R.A.P.) Rule 35 states:** *"each side requesting the same relief shall be allowed 30 minutes for argument."*

28.     Due to the voluminous record, **MR. GENTRY requested additional time for oral arguments,** in excess of the 30 minutes allowed, so as to properly present his case. Instead of granting additional time, the Tenn. Ct. of Appeals ordered *"It is*

*therefore, ordered that the motion for additional time for oral argument be denied.*
**Oral argument shall be limited to fifteen (15) minutes**." **EXHIBIT 3.** This ruling is contrary to the state appellate court's own rules as evidenced in ¶ 27 above. It is impossible for MR. GENTRY to be heard properly, considering the voluminous record, and yet another due process violation.

> A fundamental requirement of due process is "the opportunity to be heard." Grannis v. Ordean, 234 U. S. 385, 394. **It is an opportunity which must be granted at a meaningful time and in a meaningful manner**. *Armstrong v. Manzo, 380 US 545 - Supreme Court 1965*

29.    Simply put, to respond to a request for additional time by ordering less time than that allowed by the rules is obvious judicial reprisal.

30.    The Tenn. Ct. of Appeals also denied MR. GENTRY'S request to stay pending the outcome of this matter before this court which is contrary to judicial efficacy.

31.    Indeed, as Representative Perry stated long ago, as referenced in Supreme Court opinion above "***Among the most dangerous things an injured party can do is to appeal to justice***."

32.    MR. GENTRY is in great fear that the Tenn. Ct. of Appeals desires to rush to judgement, in advance of a ruling by this Honorable Court so as to distribute what little financial resources MR. GENTRY has left in an effort to cause him abject poverty.

33.     Due to the "vexatious litigation" and denial of due process in the underlying litigation giving rise to this case, MR. GENTRY has been deprived of his property and income without due process of law.  These facts have caused MR. GENTRY to amass a substantial amount of debt, and he is currently two months behind on his mortgage.  MR. GENTRY is greatly concerned that in violation of Tennessee Common Law, and as further judicial reprisal, the Tenn. Ct. of Appeals will award substantial attorney's fees to opposing party, which will result in a garnishment of his wages, which will result in the loss of his home, and will force MR. GENTRY into bankruptcy and abject poverty.  MR. GENTRY begs this Court's protection from such malicious persecution and judicial reprisal.

34.     The Tenn. Ct of Appeals also violated due process in dismissing MR. GENTRY'S Petition for Recusal Appeal.   Due to the gross violations by DEFENDANT JUDGE JOE H THOMPSON of MR. GENTRY'S constitutional rights, MR. GENTRY properly requested in writing that DEFENDANT JUDGE JOE H THOMPSON recuse himself.  MR. GENTRY'S recusal motion was denied without explanation and without stating a legal basis in violation of Tenn. Sup. Ct. Rule 10B.

35.     MR. GENTRY timely and properly filed a Petition for Recusal Appeal with the Tenn. Ct. of Appeals.  Tenn. Sup. Ct. Rule 10B § 2.02 requires a Petition for Recusal Appeal be filed within twenty-one (21) days of the trial court denying a

recusal motion.  MR. GENTRY'S recusal motion was denied on August 12, 2016.

MR. GENTRY'S Petition for Recusal Appeal was filed with the Tenn. Ct of Appeals

just ten (10) days later on August 22, 2016.  The Tenn. Ct of Appeals dismissed MR.

GENTRY'S Petition for Recusal Appeals stating:

> "While the husband's petition for recusal appeal **'appears to be untimely'**, the trial court has now entered a final judgement and the **husband has filed a Tenn. App. P.3 notice of appeal**, Appeal No. M2016-07765-COA-R3-CV.  **'Thus the Tenn. R. App. P. 3 appeal is now the proper method to appeal the recusal order'**." **EXHIBIT 1**

36.    MR. GENTRY asserts it is well within the legal expertise of the Tenn. Ct of

Appeals to compare date "A" August 12, 2016, to date "B" August 22, 2016, and

calculate the days between as less than twenty-one (21).  While "perhaps" this may

have been a harmless error of the appellate court, it certainly resulted in yet another

due process violation against MR. GENTRY.

37.    The further "Opinion" that a Rule 3 appeal precludes a recusal appeal also is

contradictory to logical legal reasoning and judicial efficacy.

38.    Regarding the dismissal of the recusal appeal, MR. GENTRY filed a motion

requesting Oral Argument.  The Tenn. Court of Appeals simply did not rule on MR.

GENTRY'S Motion in further violation of due process.

39.    Further regarding the recusal appeal, MR. GENTRY requested a stay of

proceedings pending the outcome of this case before this Court.  Due to the fact that

the Tenn. Ct. of Appeals errored in comparing date "A" to date "B" and dismissed

MR. GENTRY'S recusal appeal because it "appeared untimely", the Tenn. Ct. of

Appeals declared MR. GENTRY'S motion to stay "moot" **EXHIBIT 4**

40.    MR. GENTRY also filed a Supplemental Petition for Recusal Appeal.  The

Tenn. Ct of Appeals "apparently" refused to consider MR. GENTRY'S supplement

resulting in another due process violation stating:

> Wife's motion to dismiss will be taken under advisement pending
> the filing of an Answer by Wife. Wife is granted through
> September 30, 2016, to file her answer. **Moreover, her answer
> may be limited to Husband's initial application for appellate
> relief, without referring to Husband's Supplemental Petition.
> EXHIBIT 2**

41.    MR. GENTRY asserts an appellate court should desire to consider all the

facts, and to be unwilling to do so is yet another due process violation against MR.

GENTRY.

42.    Due to the voluminous Record, MR. GENTRY requested permission to

exceed the Appellant's Brief page limitation.   MR. GENTRY intended to raise

thirty-three separate and substantive issues on appeal.   The Tenn. Ct. of Appeals

denied MR. GENTRY'S motion **EXHIBIT 5.**

43.    Due to the apparent bias of the Tenn. Ct. of Appeals, MR. GENTRY, properly

requested the appellate court judges to recuse themselves.   Tennessee law and

Tennessee Supreme Court Rule 10B require that when there is an appearance of bias,

even if a judge believes himself impartial, a judge should recuse so as to preserve

the integrity of the judiciary.  This rule applies to appellate court judges as well as

trial court judges.  The Tenn. Ct. of Appeals denied MR. GENTRY'S Motion to Recuse. EXHIBIT 6.

44.    In an apparent effort to dismiss MR. GENTRY'S state court appeal, the Tenn. Ct of Appeals issued an order with a misleading title.  Opposing counsel had filed a motion for an extension of time to file Appellee's Brief.  The Tenn. Ct of Appeals issued an order titled "Order Related to Extension – Granted" **EXHIBIT 7**

45.    On filing his appeal, MR. GENTRY paid the required $1,000 cash bond.  The "Order Related to Extension – Granted" required MR. GENTRY to post an additional and second $1,000 cash bond within fourteen (14) days, stating that costs on appeal had exceeded $1,000.

46.    After the issuance of the order, the total court costs assessed in the case was $1,041.00.  Attached is **EXHIBIT 8** which is a detailed schedule of court costs. Subtracting out the fee for opposing counsel's "Motion for Extension to File – Brief" charge and subsequent charges, the total costs assessed prior to the extension motion was $948.

47.    MR. GENTRY alleges opposing counsel conspired with the appellate court judge(s) to file an unnecessary motion to extend time to file, so as to drive costs to exceed the original $1,000 cost bond posted by MR. GENTRY.

48.    Further considering that all of the record had been received, and that subsequent costs would be minimal and nowhere near $1,000, MR. GENTRY asserts

it was an abuse of discretion to order MR. GENTRY to post an additional $1,000 cost bond.

49.    MR. GENTRY alleges, when you put all the facts together, (1) the fact of a misleading title of the order, (2) opposing counsel's motion causing costs to exceed $1,000, (3) the fact that the Court of Appeals wrongfully dismissed MR. GENTRY'S recusal appeal, (4) the fact the Court of Appeals would dismiss MR. GENTRY'S appeal if Plaintiff didn't post the additional $1,000 within 14 days, (5) the additional facts evidencing concealment of the record from the public (*See Second Amended Complaint (Docket Entry 36) in the U.S. District Court for The Middle District of Tennessee, Case No. 3:17-cv-0020, ¶¶ 266 - 279*), when one puts all of these facts together, the evidence suggests beyond doubt MR. GENTRY will be deprived of a fair appellate hearing.

## TENNESSEE IS IN VIOLATION OF EMMOLUMENTS CLAUSE

50.    In Federalist No. 43, James Madison asked: *"But who can say what experiments may be produced by the caprice of particular States, by the ambition of enterprising leaders...?"*

51.    Today, we have one answer to that question... The bar has created a "Caste" and societal group who make the law, and hold themselves above the law and not subject to the law. Instead of "Lords", "Princes" and "Kings", our present society is subject to a new form of "Nobility" known as "judges", "esquires", etc.

52.    Our founding fathers included in the constitution an emoluments clause and we only need to find US authority willing to enforce the provisions of our federal constitution.

53.    As further stated by James Madison in Federalist 43:

> **"In a confederacy founded on republican principles, and composed of republican members, the superintending government ought clearly to possess authority to defend the system against aristocratic or monarchial innovations.** The more intimate the nature of such a union may be, the greater interest have the members in the political institutions of each other; and the greater right to insist that the forms of government under which the compact was entered into should be SUBSTANTIALLY maintained. **But a right implies a remedy; and where else could the remedy be deposited, than where it is deposited by the Constitution?** Governments of dissimilar principles and forms have been found less adapted to a federal coalition of any sort, than those of a kindred nature. "As the confederate republic of Germany," says Montesquieu, "consists of free cities and petty states, subject to different princes, experience shows us that it is more imperfect than that of Holland and Switzerland. " "Greece was undone," he adds, "as soon as the king of Macedon obtained a seat among the Amphictyons." In the latter case, no doubt, the disproportionate force, as well as the monarchical form, of the new confederate, had its share of influence on the events. **It may possibly be asked, what need there could be of such a precaution, and whether it may not become a pretext for alterations in the State governments, without the concurrence of the States themselves.**

54.    This Court must enforce the provisions of the Constitution as it is your duty and great responsibility. To not do so brings us back full circle to the very reasons we declared our independence from England and the Crown.

55.     To know this is true, this Court need only look to our own Declaration of Independence and the grievances stated therein as the basis for declaring independence. The same grievances stated in our Declaration of Independence are being suffered in state courts across the country. Those grievances suffered by our founding fathers are now being suffered under by MR. GENTRY and many others like him.

56.     The State ignores rights set forth in the constitution:

> He has refused his Assent to Laws, the most wholesome and necessary for the public good.

57.     Since 1835, the Tennessee Constitution permitted citizens to sue the state. In 2016 Tennessee enacted the Government Tort and Liabilities Act which prevents suits against the state related to judicial proceedings even when malicious and abusive.

> For taking away our Charters, abolishing our most valuable Laws, and altering fundamentally the Forms of our Governments:
>
> He has forbidden his Governors to pass Laws of immediate and pressing importance, unless suspended in their operation till his Assent should be obtained; and when so suspended, he has utterly neglected to attend to them.

58.     Judges now rule according to the whims of an aristocracy comprised of "elite members of the bar"

> He has made Judges dependent on his Will alone, for the tenure
> of their offices, and the amount and payment of their salaries.

59.     Swarms of attorney's prey upon innocent victims through "vexatious litigation."

> He has erected a multitude of New Offices, and sent hither
> swarms of Officers to harrass our people, and eat out their
> substance.

60.     As evidenced in this case, MR. GENTRY suffered a "mock trial"

> For protecting them, by a mock Trial, from punishment for any
> Murders which they should commit on the Inhabitants of these
> States:

> For depriving us in many cases, of the benefits of Trial by Jury:

61.     History has shown us that Aristocracies bent on corruption cannot long survive. We need only to our own history and current events to know this is true. Consider the facts of our own history and why we declared independence. Consider the corrupt government Greece living beyond its means at the expense of the EU and failure of that economy. Consider the corruption still ongoing in Venezuela.

62.     With what is happening now in state courts across the country is damaging our country as a whole. High-earning individuals are targeted for "vexatious litigation." The process of "vexatious litigation" causes mental injury in the best and brightest amongst us. The very people who grow our economy are so injured they turn to substance abuse, suffer bankruptcies, and in many unfortunate cases even suicide. Let us not ignore this problem, let us not pretend it does not exist.

63.    Groups are forming around the country to combat judicial corruption. A quick google search will show this to be true. Groups like the "Judicial Accountability Movement" on Facebook, and the Family Civil Liberties Union website.

64.    Lawsuits against the various states are rapidly increasing and instead of addressing the real problem, the states "protect" themselves from suit by enacting unconstitutional laws like the Tenn. Govt. Tort & Liabilities Act.

65.    The movement we are seeing today is not unlike the "Suffrage Movement" in the 1870's demanding woman's right to vote. Let us not wait to address this problem until the people are so harmed, that they protest by "Hunger Strike." Let us begin to address this problem today in this Court.

66.    I encourage this Honorable Court to read MR. GENTRY'S complaint against the State of Tennessee. Second Amended Complaint (*Docket Entry 36*) in the U.S. District Court for The Middle District of Tennessee, Case No. 3:17-cv-0020.

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF PRAYS**

For this Court to issue injunction upon the State of Tennessee and Court of Appeals for The State of Tennessee Middle Section, At Nashville and STAY PROCEEDINGS IN CCA No. M2016-01765-COA-R3-CV, until the present matter before the Court in this case is decided.

# TYPE-VOLUME CERTIFICATION

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), and 27 (d)(2) MR GENTRY hereby certifies that this brief complies with the type-volume limitation in Rule 32(a)(7)(B) and 27 (d)(2) because, as counted by the Microsoft Word 2016, word count tool, this motion contains 4,833 words, excluding the parts exempted by Rule 32(a)(7)(B)(iii). This motion complies with the typeface requirements in Rule 32(a)(5)(A) and the type-style requirements in Rule 32(a)(6) because this motion has been prepared in proportionally spaced 14-point Times New Roman font.  Dated May 13, 2017

Respectfully submitted,

John A Gentry, CPA, Pro Se
208 Navajo Court,
Goodlettsville, TN 37072
(615) 351-2649
John.a.gentry@comcast.net

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent via email and via First Class US Mail, postage prepaid to;

Joseph Ahillen, BPR # 028378
Assistant Attorney General
Civil Rights and Claims Division
Office of the Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207

Jaclyn L. McAndrew
Assistant Attorney General
Civil Rights and Claims Division
Office of the Attorney General
P.O. Box 20207
Nashville, Tennessee 37202-0207

On this the 13th day of May, 2017

John Anthony Gentry, CPA

FILED

OCT 0 6 2016

Clerk of the Courts
Rec'd By _____

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

### Circuit Court for Sumner County
### No. 2014CV393

---

### No. M2016-01731-COA-T10B-CV

---

### ORDER

On August 22, 2016, the husband, John Anthony Gentry, filed a "Petition for Rehearing Before a Different Judge" asserting that the trial court erred in denying his motion for recusal. The court considered the husband's petition as a Tenn. Sup. Ct. R. 10B, § 2.02 petition for recusal appeal and directed the wife, Katherine Wise Gentry, to file an answer. The wife has filed both an answer and a motion to dismiss the petition as untimely. In addition, the husband has filed a supplemental petition for recusal appeal and a response to the motion to dismiss.

Review of a trial court's decision on a motion to recuse may be sought by filing either a Tenn. Sup. Ct. R. 10B petition for recusal appeal within fifteen days after entry of the trial court's order or a Tenn. R. App. P. 3 appeal as of right after entry of a final judgment. Tenn. Sup. Ct. R. 10B, § 2.01. While the husband's petition for recusal appeal appears to be untimely, the trial court has now entered a final judgment and the husband has filed a Tenn. R. App. P. 3 notice of appeal, Appeal No. M2016-01765-COA-R3-CV. Thus the Tenn. R. App. P. 3 appeal is now the proper method to appeal the recusal order. Because the trial court has entered a final judgment and the husband may raise any issues related to the recusal order in his Tenn. R. App. P. 3 appeal as of right, a Tenn. Sup. Ct. R. 10B accelerated interlocutory appeal as of right is both inappropriate and unnecessary.

It is, therefore, ordered that the husband's petition for recusal appeal be dismissed. The costs are taxed to John Anthony Gentry and his surety for which execution may issue.

PER CURIAM



EXHIBIT 1

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

**Circuit Court for Sumner County**
**No. 2014CV393**

```
FILED
SEP 1 4 2016
Clerk of the Courts
Rec'd By _____
```

**No. M2016-01731-COA-T10B-CV**

### ORDER

Appellee Katherine Wise Gentry ("Wife") filed a motion for extension of time to file an answer to appellant John Anthony Gentry's ("Husband") petition for recusal appeal. Wife additionally filed a motion to dismiss the appeal as untimely. Wife also requests instruction as to whether she must respond to Husband's Supplemental Petition for Recusal, which he filed after the court ordered Wife to file an answer.

Wife's motion to dismiss will be taken under advisement pending the filing of an Answer by Wife. Wife is granted through September 30, 2016, to file her answer. Moreover, her answer may be limited to Husband's initial application for appellate relief, without referring to Husband's Supplemental Petition.

It is so Ordered.

PER CURIAM



EXHIBIT 2

FILED
05/09/2017
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

**Circuit Court for Sumner County**
**No. 83CC1-2014-CV-393**

---

### No. M2016-01765-COA-R3-CV

---

### ORDER

The appellant, John Anthony Gentry, has filed a motion requesting additional time for oral argument. Oral argument before this court is normally limited to fifteen (15) minutes per side, and we find insufficient grounds to grant additional time in this case.

In addition, Mr. Gentry has filed a motion to stay this appeal pending a decision by the United States Court of Appeals for the Sixth Circuit in a related appeal. Having reviewed the motion, we decline to stay this appeal.

It is, therefore, ordered that the motion for additional time for oral argument be denied. Oral argument shall be limited to fifteen (15) minutes per side.

It is further ordered that the motion to stay the appeal be denied.

PER CURIAM



Exhibit 3

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED
OCT 06 2016
Clerk of the Courts
Rec'd By _____

**JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY**

Circuit Court for Sumner County
No. 2014CV393

No. M2016-01731-COA-T10B-CV

### ORDER

On October 3, 2016, the husband, John Anthony Gentry, filed a "Motion to Stay Petition for Recusal Proceedings" in this matter pending a decision by the United States District Court for the Middle District of Tennessee regarding the husband's complaint in federal court asserting that his constitutionally rights were violated by the trial court judge during the divorce case underlying this petition for recusal appeal. Because this Rule 10B appeal is being dismissed pursuant to a separate order, the motion to stay is now moot. Accordingly, the motion is denied.

It is, therefore, ordered that the husband's motion to stay petition for recusal be denied.

PER CURIAM



# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

**Circuit Court for Sumner County**
**No. 83CC1-2014-CV-393**

---

**No. M2016-01765-COA-R3-CV**

---

FILED

NOV - 3 2016

Clerk of the Courts
Rec'd By _____

## ORDER

The appellant has filed a motion to exceed the page limitation provided by Tenn. R. App. P. 27(i). Tenn. R. App. P. 27(i) limits the argument in the appellant's principal brief to 50 pages. The 50 page limit applies only to the argument section of the appellant's brief. The page limit does not apply to any other sections of the brief, and "the full brief may exceed the 50 page limitation." Tenn. R. App. P. 27(i), *Advisory Commission Comments*. Accordingly, we find insufficient grounds to waive the 50 page limit.

It is, therefore, ordered that the Motion to Extend Appellant's Brief Page Limitations and Further Instructions be denied.

PER CURIAM

EXHIBIT 5

FILED
11/16/2016
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

**Circuit Court for Sumner County**
**No. 83CC1-2014-CV-393**

---

**No. M2016-01765-COA-R3-CV**

---

## ORDER

The appellant, John Anthony Gentry, has filed a motion seeking recusal of the judge or judges who approved four specific orders entered in this appeal and in his previous Tenn. Sup. Ct. R. 10B accelerated interlocutory appeal in No. M2016-01731-COA-T10B-CV. As grounds for recusal, Mr. Gentry asserts these adverse rulings indicate bias.

The panel that approved the orders entered on September 1 and October 6, 2015 in the Rule 10B appeal was comprised of Judge Frank G. Clement, Jr., Judge Thomas R. Frierson, II, and Judge Kenny W. Armstrong. The judge who approved the other orders specified in the motion, those entered on September 14 and November 3, 2016, was Judge Frank G. Clement, Jr.

Each judge identified above stands by the correctness of his decisions and states without reservation that he has no bias toward any party in this appeal. Furthermore, a judge's adverse ruling is not usually sufficient to establish bias. *State v. Cannon*, 254 S.W.3d 287, 308 (Tenn. 2008); *Davis v. Liberty Mut. Ins. Co.*, 38 S.W.3d 560, 565 (Tenn. 2001). This is because rulings of a judge, "even if erroneous, numerous and continuous, do not, without more, justify disqualification." *State v. Alley*, 882 S.W.2d 810, 821 (Tenn. Ct. Crim. App. 1994).

Finding that Mr. Gentry has failed to establish that the impartiality of the judges may reasonably be questioned, it is ORDERED that the Motion Seeking Disqualification or Recusal of Appellate Judges be denied. Costs associated with this motion are assessed against Mr. Gentry.

PER CURIAM



EXHIBIT 6



Court of Appeals – Middle Division
Appellate Court Clerk's Office - Nashville
100 Supreme Court Building
401 7th Avenue North
Nashville, TN 37219-1407
(615) 741-2681

John Anthony Gentry
208 Navajo Court
Goodlettsville TN 37072

Re: M2016-01765-COA-R3-CV - JOHN ANTHONY GENTRY v. KATHERINE WISE
GENTRY

Notice: Order Related to Extension - Granted

Attached to this cover letter, please find the referenced notice issued in the above case. If you
have any questions, please feel free to call our office at the number provided.

cc:   John Anthony Gentry
      Pamela Anderson Taylor



# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

**Sumner County Circuit Court**
**83CC1-2014-CV-393**

**No. M2016-01765-COA-R3-CV**

**Date Printed:  02/15/2017**                    **Notice / Filed Date: 02/15/2017**

---

### NOTICE - Order Related to Extension - Granted

---

The Appellate Court Clerk's Office has entered the above action.

James M. Hivner
Clerk of the Appellate Courts

FILED
02/15/2017
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## JOHN ANTHONY GENTRY v. KATHERINE WISE GENTRY

### Circuit Court for Sumner County
### No. 83CC1-2014-CV-393

---

### No. M2016-01765-COA-R3-CV

---

### ORDER

Pursuant to Tenn. R. App. P. 6, the appellant filed a cash bond in the amount of $1000. A $1000 cash bond is considered sufficient in the absence of specific direction from the court as to some other amount. Tenn. R. App. P. 6, *Advisory Commission Comments*. The clerk has notified the court that, due to the numerous filing in the appeal, the costs on appeal already exceed $1000. Accordingly, the $1000 cash bond is no longer sufficient to secure the payment of the costs as required by Tenn. R. App. P. 6, and the appellant will need to file an additional cash bond.

In addition, the appellee has filed a motion requesting a twenty-one day extension of time within which to file her brief. The appellant opposes the motion. The court finds good cause to grant the extension of time.

It is, therefore, ordered that the time for filing the appellee's brief is extended through March 31, 2017.

It is further ordered that the appellant shall file an additional $1000 cash bond with the clerk of this court within fourteen (14) days following the entry of this order.

PER CURIAM

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2016; All rights reserved.

PRESS FIRMLY TO SEAL

PRESS FIRMLY TO SEAL

U.S. POSTAGE
PAID
GOODLETTSVILLE, TN
37072
MAY 15 17
AMOUNT
$26.50
R2300S10913-08

1007    48202

UNITED STATES POSTAL SERVICE®

PRIORITY ★ MAIL EXPRESS™

EL 698 059 083 US

CUSTOMER USE ONLY
FROM: (PLEASE PRINT)    PHONE ( )

John A. Geary
309 Navajo Ct
Goodlettsville, TN

TO: (PLEASE PRINT)    PHONE ( )

US District Court Clerk
100 East Fifth Street
Potter Steward Courthouse
Cincinnati, OH
45202-3988

ZIP + 4® (U.S. ADDRESSEES ONLY)

PAYMENT BY ACCOUNT (If applicable)

DELIVERY OPTIONS (Customer Use Only)
☐ No Saturday Delivery (delivered next business day)
☐ Sunday/Holiday Delivery Required (additional fee, where available*)
☐ 10:30 AM Delivery Required (additional fee, where available*)
*Refer to USPS.com® or local Post Office™ for availability.

SIGNATURE REQUIRED

WRITE FIRMLY WITH BALL POINT PEN ON HARD SURFACE TO MAKE ALL COPIES LEGIBLE.

ORIGIN (POSTAL SERVICE USE ONLY)
PO ZIP Code    37072
Scheduled Delivery Date (MM/DD/YY)    5/15/17
Postage    $23.75

Date Accepted (MM/DD/YY)
Scheduled Delivery Time
☐ 10:30 AM  ☑ 3:00 PM  ☐ 12 NOON
Insurance Fee    $
COD Fee    $

Time Accepted    11:43    ☐ AM  ☑ PM
10:30 AM Delivery Fee    $
Return Receipt Fee    $
Live Animal Transportation Fee    $

Special Handling/Fragile    $
Sunday/Holiday Premium Fee    $
Total Postage & Fees    $26.50

Weight    lbs.    oz.
Flat Rate ☐
Acceptance Employee Initials    KVG

DELIVERY (POSTAL SERVICE USE ONLY)
Delivery Attempt (MM/DD/YY)    Time    ☐ AM  ☐ PM    Employee Signature
Delivery Attempt (MM/DD/YY)    Time    ☐ AM  ☐ PM    Employee Signature

LABEL 11-B, OCTOBER 2016    PSN 7690-02-000-9996    3-ADDRESSEE COPY

★ MAIL ★ EXPRESS™
OUR FASTEST SERVICE IN THE U.S.

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

EMS

EP13F July 2013    OD: 12.5 x 9.5

US AT USPS.COM
FREE SUPPLIES ONLINE

For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
$100.00 insurance included.